06 CV 7780

LAW OFFICES OF VINCENT E. BAUER
475 PARK AVENUE SOUTH, 25TH FLOOR
NEW YORK, NEW YORK 10016
Tel: 212-575-1517
Fax: 212-689-2726



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ROSA COX

                      COMPLAINT

         Plaintiff,

                      JURY TRIAL DEMANDED

- against -


GUARDIAN SERVICE INDUSTRIES, INC.

         Defendant.

_____

Plaintiff Rosa Cox, through her attorneys, The Law Offices of Vincent E. Bauer, seeks redress for intentional discrimination and harassment against her by defendant Guardian Service Industries, Inc. because of her race (black) and national origin (Dominican) and for retaliation against her for opposing discriminatory practices within the Company, and for her complaint hereby states as follows:

<u>The Parties</u>

1.    Plaintiff Rosa Cox ("Plaintiff" or "Ms. Cox") is and at all relevant times was a resident of Queens, New York.

2.     Defendant Guardian Service Industries, Inc. ("Guardian" or "Defendant"), upon information and belief, is a corporation authorized to conduct business within the state of New York, which regularly conducts business within the County of New York.

## Venue and Jurisdiction

3.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims under 42 U.S.C. § 1981 raise a federal question and because this Court has pendent jurisdiction over Plaintiff's state law claims.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claim occurred in this district and because Defendant is subject to personal jurisdiction in this district.

## Factual Background

5. Plaintiff was hired by Guardian on January 25, 1999 as a cleaning person. She has worked in that position to date.

6. Nearly from the outset of her employment, Plaintiff has been subjected to a continuing pattern of harassment and discrimination.

7. For example, as far back as early 1999, Plaintiff's then route supervisor (whom she believes to be named Atley Spinderro) told Alan Bressler, Guardian's owner, to get rid of Plaintiff, stating that he could get an Albanian to do better work than her.

8. Thereafter, in the Summer of 2000, that supervisor told Plaintiff that he wanted to fire her because he did not like her. He also called her a "nigger" approximately ten times between 2001 and the Summer of 2003, and told her that black people were lazy. He also called her "shitty woman" in or around September of 2003.

9. He would also, between 2001 and the Summer of 2003, on a frequent basis, throw her paycheck on the ground when she came to collect it, and would tell her "get the fuck out of here" after she picked it up.

10. Mr. Spinderro also told Plaintiff in October 2002 that he would like to kick her in the face, and that, if he did what he had to do, no one would stop him or tell him anything.

11. While under the supervision of Mr. Spinderro, in early 2000, three of Ms. Cox's work uniforms were intentionally cut by a Guardian employee. Additionally, cleaning solution was poured into her shoes. These incidents were reported by Plaintiff to Alan Bressler, but no action was taken and no investigation conducted.

12. In 2001, Ms. Cox's medical insurance was cancelled by Guardian without notice or legitimate reason, while she was hospitalized, resulting in expenses of approximately $30,000 to Ms. Cox.

13. During that same hospital stay, which was necessitated by the stress resulting from Guardian's abusive treatment of her, Ms. Cox was contacted by David Marshall, a Guardian employee, by telephone. When Ms. Cox asked him where she would be assigned following her medical leave, he told her she was to be fired, a heartless thing to say to a woman in the hospital.

14. Also in 2001, Mr. Marshall asked Ms. Cox, who had been diagnosed with depression, what medication had been prescribed for her. When Ms. Cox told him that she had been prescribed with Paxil and Xanax, Mr. Marshall laughed at her derisively.

15. Ms. Cox's subsequent supervisors also harassed and abused her. For example, Efron Gulushi, Ms. Cox's route supervisor, between 2001 and the present, repeatedly called Ms. Cox a "nigger" and a "lazy black bitch", and uttered other racially derogatory remarks to her.

16. In December 2003, Mr. Gulushi told Ms. Cox that, if she did not stop "fucking around", her body would not be found.

17. Mr. Gulushi also told other employees that Ms. Cox was a company spy, and encouraged them to try to drive Ms. Cox from the company. His abuse of Ms. Cox was persistent, and continues to date. In that regard, in early 2006, Mr. Gulushi called Ms. Cox an "asshole."

18. In 2001, a co-worker of Ms. Cox named David [last name unknown] told Ms. Cox that Mr. Gulushi had told him that Mr. Bressler was "fucking" Ms. Cox. In doing so, he placed a banana in his lap, which he referred to as a big "pinga", and said that Mr. Bressler would kick her out when he was done, like the "company dog." Upon information and belief, Mr. Gulushi repeated that false statement to other Guardian employees, including David Marshall.

19. Ms. Cox complained about this egregious conduct to Mr. Bressler the next day. In response, Mr. Bressler asked her in a joking manner "so what if they say you are sleeping with a rich man?" Neither Mr. Bressler nor Guardian took any action in response to that complaint. Thereafter, David repeatedly referred to Ms. Cox as "nigger" and "smelly."

20. In October 2003, Mr. Bressler's wife asked Ms. Cox to withdraw her complaint of sexual harassment. When Ms. Cox refused to do so, her treatment became progressively worse.

21. In September 2003, an employee of one of the law firms whose offices were cleaned by Guardian sexually harassed Ms. Cox, by rubbing his private parts against Ms. Cox's body. When Ms. Cox complained to Mr. Bressler about this conduct, he took no action, instead telling Ms. Cox never to return to the building where that conduct took place or to speak of that incident again.

22. Mr. Gulushi refused to assign Ms. Cox to a regular work site, and would assign more favorable sites to white employees. This practice has continued to date. On one occasion, Ms.

Cox was assigned to unclog toilets, just to humiliate her. Mr. Gulushi also, between 2001 and 2004, frequently refused to submit time records necessary for Ms. Cox to receive her paycheck. Mr. Gulushi has also frequently refused to assign Ms. Cox to any work site, resulting in her being deprived of thousands of dollars in income. That practice has also been continued to date.

23. Mr. Gulushi also set out to manufacture a record of poor performance by Ms. Cox as a basis to drive her from the company. In that regard, he has routinely changed her work assignments and prepared performance warnings based upon "tenant complaints."

24. In each instance, Ms. Cox would confirm directly with either the building manager or a tenant representative that her performance had been fine, and some of those individuals have provided letters of reference to Ms. Cox. In that regard, in 2001, Mr. Bressler's wife called Ms. Cox to inform her that Mr. Gulushi was out to get Ms. Cox. Of course, despite that knowledge, no disciplinary action was taken against Mr. Gulushi.

25. At the encouragement of Mr. Gulushi and David Marshall, Guardian's internal manager, Ms. Cox's co-workers also harassed her. For example, Ms. Billiana Popa repeatedly used racial epithets and hostile, profane language towards Ms. Cox. On one occasion, in October 2004, she threatened Ms. Cox and assaulted her, spitting in her face and knocking her eyeglasses from her nose, causing them to break.

26. In February 2005, Ms. Popa called Ms. Cox a "lazy jackass", and "nasty." In March 2005, Ms. Popa threatened to "kick [Ms. Cox's] ass", and called her a "whore" and a "thief."

27. Ms. Popa also conspired to deprive Ms. Cox of work shifts, in order to lower her compensation. That practice has continued for years. On one occasion, Ms. Popa allowed white co-workers to leave work early, but required Ms. Cox to stay, saying "let that black bitch stay late."

28. A Guardian building supervisor named Estee also harassed Ms. Cox. Apparently believing that Ms. Cox had reported that he was at a bar when he was to have been at work, he exploded at Ms. Cox, slamming a door on her hand and nearly breaking it. He has also said "fuck you" and "you have some fucking problem" to Ms. Cox.

29. In July 2004, David Marshall threatened to kick Ms. Cox when she came to the office to fill out disability forms. This threat was made only five days after Ms. Cox underwent breast surgery.

30. In August 2004, Mr. Marshall asked Ms. Cox "why don't you lose some weight?" Around that same time, Guardian's supervisors refused to assign Ms. Cox to a work site for an entire month.

31. During 2005 and through August 2006, a co-worker named Charles Kelly consistently harassed Ms. Cox, following her around the workplace. On several occasions, Mr. Kelly and other Guardian employees created messes in areas which had been cleaned, in an effort to make it seem that her work was poor. In February 2005, Mr. Kelly threatened to "fuck [Ms. Cox] up."

32. Recently, Diana Arboleda, a co-worker of Ms. Cox, and Mr. Kelly have been telling other co-workers to avoid Ms. Cox because she is "troubled," and that they were trying to get her fired.

33. In April 2006, Ms. Cox was placed on an unpaid suspension, based upon false allegations of poor work performance.

## FIRST CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1981

34.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 33 as though fully set forth herein.

35. Guardian's intentional discrimination, harassment, and retaliation against Plaintiff on the basis of her race and national origin, and for complaining of discrimination, as described above, constitute a continuing violation of 42 U.S.C. § 1981.

36. As the direct and proximate result of Guardian's violation of that statute, Plaintiff suffered economic damages and emotional pain and suffering, for which Guardian is liable.

## SECOND CAUSE OF ACTION
## VIOLATION OF N.Y. EXECUTIVE LAW

37. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36 as though fully set forth herein.

38. Guardian's intentional discrimination, harassment, and retaliation against Plaintiff on the basis of her race and national origin, and for complaining of discrimination, as described above, constitute a continuing violation of the New York Executive Law § 296, et seq.

39. As the direct and proximate result of Guardian's violation of that statute, Plaintiff suffered economic damages and emotional pain and suffering, for which Guardian is liable.

## THIRD CAUSE OF ACTION
## VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE

40. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 39 as though fully set forth herein.

41. Guardian's intentional discrimination, harassment, and retaliation against Plaintiff on the basis of her race and national origin, and for complaining of discrimination, as described above, constitute a continuing violation of the New York City Administrative Code provisions concerning discrimination.

42. As the direct and proximate result of Guardian's violation of those provisions, Plaintiff suffered economic damages and emotional pain and suffering, for which Guardian is liable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court: award her economic, compensatory and punitive damages, and attorneys' fees, in an amount to be determined at trial; direct Defendant to reinstate Plaintiff; and award Plaintiff such other and further relief as it deems just and proper. A jury trial is demanded.

Dated: New York, NY
September 25, 2006

Respectfully submitted,

_____

Vincent E. Bauer (VB-0794)
Law Offices of Vincent E. Bauer
475 Park Avenue South, 25th Floor
New York, New York 10016

Counsel to Plaintiff